**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NOHASSES GONZALEZ CRUZ,

*Petitioner,*

v.

THOMAS DECKER,
    as Field Office Director,
    New York City Field Office,
    U.S. Immigration & Customs
    Enforcement;

JAMES MCHENRY,
    as Director of the Executive Office
    for Immigration Review;

CHAD F. WOLF,
    as Acting Secretary,
    U.S. Department of Homeland
    Security;

WILLIAM BARR,
    as Attorney General,
    U.S. Department of Justice.

*Respondents.*

Civil Action No. _____

**PETITION FOR WRIT OF
HABEAS CORPUS
PURSUANT TO 28 U.S.C. §
2241**

Petitioner Nohasses Gonzalez Cruz ("Mr. Gonzalez Cruz") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the All Writs Act, 28 U.S.C. § 1651, and Article I, Section 9, of the Constitution of the United States. Mr. Gonzalez Cruz challenges his prolonged detention without a bond hearing. He alleges the following in support of his petition:

## INTRODUCTION

1. Mr. Gonzalez Cruz is a 42-year-old resident of New York City who has lived in the United States for more than 38 years. Mr. Gonzalez Cruz is a long-term lawful permanent resident and the father of four children ranging in ages from 24 to 11 years old. He has been gainfully employed most recently as a welder. He is a member of an Iron Workers Union as well as the Theatrical Teamsters Union. On March 26, 2016, he was injured while working and has been deemed disabled since that time.

2. As of the date of this filing, Mr. Gonzalez Cruz has been imprisoned by Respondents for over 9 months without a bond hearing or any judicial custody review.

3. Respondents charge Mr. Gonzalez Cruz as removable based on a conviction for New York Penal Law ("NYPL") Section 220.39(1) which renders him removable from the United States as a non-citizen convicted of an aggravated felony as well as a a non-citizen convicted of a controlled substance offense. (See INA §237(a)(2)(A)(iii) and 237(a)(2)(B)(i). They contend that Mr. Gonzalez Cruz's criminal conviction for NYPL 220.39(1) subjects him to mandatory detention under 8 U.S.C. § 1226(c). Respondents assert that they can and must continue to

1

detain Mr. Gonzalez Cruz while his case proceeds in court, which could take months or even years.

4. Mr. Gonzalez Cruz's continued detention under § 1226(c) violates his due process rights under the Fifth Amendment of the United States Constitution. The only lawful purposes of civil immigration confinement are to mitigate risk of flight or danger to the public – neither of which are served here *See Demore v. Kim*, 538 U.S. 510, 532–33 (2003) (Kennedy, J., concurring).

5. Petitioner respectfully requests that this Court issue a writ of habeas corpus, ordering Respondents to, within seven days of this Court's order, release Petitioner on his own recognizance or provide him with a bond hearing where the government bears the burden of showing by clear and convincing evidence that Mr. Gonzalez Cruz is a future danger or flight risk.

## PARTIES

6. Petitioner is a longtime resident of New York, New York who has been detained under the control of Respondent Thomas Decker since December 12, 2019. Mr. Gonzalez Cruz is detained at the Hudson County Correctional Facility in Kearny, New Jersey, within the jurisdiction of the Department of Homeland Security's ("DHS") New York Field Office for Immigration and Customs Enforcement ("ICE NY Field Office") located at 26 Federal Plaza, New York, NY 10278. Removal proceedings against Mr. Gonzalez Cruz took place at the Varick Street Immigration Court at 201 Varick Street, New York, NY 10014 ("Varick Street Immigration Court").

2

7. Respondent Thomas Decker is named in his official capacity as Director of the ICE NY Field Office. In this capacity, he is responsible for the administration of the immigration laws and exercises control over all detention and removal operations and determinations for ICE detainees confined within the jurisdiction of the New York Field Office. As such, Respondent Decker is a legal custodian of Petitioner. Respondent Decker's office is located at 26 Federal Plaza, New York, NY 10278.

8. Respondent James McHenry is named in his official capacity as Director of the Executive Office for Immigration Review ("EOIR"). In this capacity, he is responsible for the administration of the immigration laws and the administration and functioning of the Immigration Courts, including the Varick Street Immigration Court; as such he routinely transacts business in the Southern District of New York. He furthermore is legally responsible for administering Petitioner's removal and bond proceedings and is thus a legal custodian of Petitioner. Respondent McHenry's office is located at 5107 Leesburg Pike, Falls Church, VA 22041.

9. Respondent Chad F. Wolf is named in his official capacity as Acting Secretary of DHS. In this capacity, he is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a); he routinely transacts business in the Southern District of New York; he supervises Respondent Decker; and he is responsible for the pursuit of Petitioner's detention and removal and, as such, he is a legal custodian of Petitioner. Respondent Wolf's office is located at the United States Department of Homeland Security, Washington, D.C. 20528.

10. Respondent William Barr is named in his official capacity as the Attorney General of the
    United States. In this capacity, he is responsible for administration of the immigration laws
    pursuant to 8 U.S.C. § 1103(g). He routinely transacts business in the Southern District of New
    York and is legally responsible for administering Petitioner's removal and bond proceedings
    and the standards used in those proceedings and, as such, he is a legal custodian of Petitioner.
    Respondent Barr's office is located at the United States Department of Justice, 950
    Pennsylvania Avenue, N.W., Washington, D.C. 20530.

## JURISDICTION

11. Petitioner's ongoing detention falls entirely under Respondents' authority. Petitioner is
    currently detained by the ICE New York Field Office. *See* Ex. A, Notice to Appear ("NTA").
    Petitioner's immigration proceedings are being held by the Executive Office for Immigration
    Review at the Varick Street Immigration Court. Id.

12. This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241; 28
    U.S.C. § 1331; Article I, § 9, cl. 2 of the United States Constitution; the All Writs Act, 28
    U.S.C. § 1651; and the Administrative Procedure Act, 5 U.S.C § 701. Additionally, the Court
    has jurisdiction to grant injunctive relief in this case pursuant to the Declaratory Judgment Act,
    28 U.S.C. § 2201. Petitioner's detention as controlled and enforced by Respondents constitutes
    a "severe restraint[] on [Petitioner's] individual liberty," as Petitioner is "subject to restraints
    not shared by the public generally," he "cannot come and go as he pleases," and his "freedom

of movement rests in the hands of" public officers. *See Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973).

13. Although only federal courts of appeal have jurisdiction to review removal orders directly through petitions for review, *see* 8 U.S.C. § 1252(a)(1), (b), federal district courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the lawfulness or constitutionality of their detention by Immigration and Customs Enforcement ("ICE"). *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

14. The Southern District of New York has personal jurisdiction over all Respondents. New York state law provides for personal jurisdiction over any non-domiciliary who "transacts any business within the state," whether in person or through an agent. N.Y. CPLR § 302(a)(1). Further, each Respondent can be properly served in New York under the Federal Rules of Civil Procedure 4(e)(1) and New York state law. *See* Fed. R. Civ. P. 4(e)(1) (service is proper pursuant to state laws in the relevant state); N.Y. C.P.L.R. 308 (McKinney) (service is proper on a person or their agent physically located in the state). Respondent Decker may be properly served at his office located at the ICE New York Field Office, 26 Federal Plaza, 9th Floor, Suite 9-110, New York, New York 10278. Personal jurisdiction is proper because one or more of Respondents' place of business is in this District, and the events or omissions giving rise to the claim occurred or will occur in this District. Petitioner was arrested by officers from the ICE

NY Field Office located within this District and is subject to ongoing removal proceedings within this District.

## VENUE

15. The Southern District of New York is the proper venue to bring this petition for a writ of habeas corpus. 28 U.S.C. § 1391(b)(2) provides that "[a] civil action may be brought in... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Here, a substantial part of the events and omissions giving rise to Petitioner's habeas claim have occurred within this District, including the processing of Petitioner after his arrest by Respondents, the determination that he is subject to detention under 8 U.S.C. § 1226(c), the determination that he will not be granted a bond hearing, and every one of his immigration hearings. If Petitioner is granted a bond hearing, it will occur within this District at the Varick Street Immigration Court.

16. Further, pursuant to 28 U.S.C. § 2241(d), venue properly lies in the Southern District of New York because Petitioner is in the custody of Respondents. Respondent Decker, who has control over Respondent's detention as the Director of the ICE NY Field Office, is located within this District at 26 Federal Plaza, New York, NY. *See Sanchez v. Decker*, No. 18 Civ. 8798 (AJN), 2019 WL 3840977, at *2 (S.D.N.Y. Aug. 15, 2019) (finding that Respondent Decker is the proper respondent to a habeas petition brought on behalf of an immigration detainee housed in the Bergen County Jail in New Jersey, and thus that venue was proper in the Southern District

of New York); *Cruz v. Decker*, No. 18 Civ. 9948 (GBD) (OTW), 2019 WL 4038555, at *2-3 (S.D.N.Y. Aug. 27, 2019) (same).

17. Mr. Gonzalez Cruz was physically present in the Southern District of New York on September 23, 2020.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. Where the agency has predetermined a dispositive issue—here, the interpretation of the mandatory detention statute—no further action with the agency is necessary. *See, e.g., Araujo-Cortes*, 35 F.Supp.3d 533, 538-39 (2014) (finding that an appeal regarding petitioner's classification under the mandatory detention statute would be futile given consistent Board of Immigration Appeals precedent on the issue); *Monestime v. Reilly*, 704 F. Supp. 2d 453, 456-57 (S.D.N.Y. 2010) (same); Garcia, 615 F. Supp. 2d at 180 (same).

19. Moreover, the petitioner need not exhaust administrative remedies. There is no statutory requirement of exhaustion and further administrative action in this case would be futile. *See Louisaire v. Muller*, 758 F. Supp. 2d 229, 234 (S.D.N.Y. 2010); *Garcia v. Shanahan*, 615 F. Supp. 2d 175, 180 (S.D.N.Y. 2009); *Araujo-Cortes*, 35 F.Supp.3d at 539 (citing *United States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002)) (explaining that "the BIA does not have jurisdiction to adjudicate constitutional issues.").

## STATEMENT OF FACTS

### Mr. Gonzalez Cruz's Immigration History, Family Ties, and Hardship

20. Petitioner Nohasses Gonzalez Cruz is a 42-year-old resident of New York, New York who has lived in the United States for more than 38 years. Mr. Gonzalez Cruz entered the United States lawfully as a permanent resident with his mother and father in July 24, 1982. His entire immediate family as well as his extended family resides in the United States. Mr. Gonzalez Cruz is the father of four United States citizen children ranging in age from 24 to 11 years old. He has not left the United States since he arrived as a child aside from a vacation to the Dominican Republic when he was approximately 11 years old. Before being detained by the Respondents, Mr. Gonzalez Cruz lived with his youngest son and his mother in Brooklyn, New York.

21. Mr. Gonzalez Cruz has 6 criminal convictions: on April 30, 2002 Mr. Gonzalez Cruz was convicted of NYPL § 220.16 (12), Criminal Possession of a Controlled Substance; on February 8, 2006, Mr. Gonzalez Cruz was convicted of NYPL § 145 (1), Criminal Mischief; on January 23, 2008, Mr. Gonzalez Cruz was convicted of § 165.40, Criminal Possession of Stolen Property; on March 30, 2010, Mr. Gonzalez Cruz was convicted of violating NY Vehicle and Traffic Law §1192(1), Driving While Ability Impaired by the Consumption of Alcohol; on December 12, 2012, Mr. Gonzalez Cruz was convicted of NYPL § 220.03 Criminal Possession of a Controlled Substance; on December 12, 2015, Mr. Gonzalez Cruz was convicted of NYPL §220.39(1), Criminal Sale of a Controlled Substance. The longest sentence he received was ten days in jail. The vast majority of the conduct that led to his convictions took place in the context of untreated addiction and mental health issues. None of Mr. Gonzalez Cruz's convictions involved violent conduct.

8

22. As a result of his April 30, 2002 conviction Mr. Gonzalez Cruz was placed into removal

proceedings. He sought relief from removal and was granted cancellation of removal for lawful

permanent residents on February 24, 2003 by Immigration Judge John B. Reid sitting at the

Immigration Court in Batavia, New York. See INA 240(a)(A).

## Mr. Gonzalez Cruz's Removal Proceedings

23. ICE arrested Mr. Gonzalez Cruz on December 12, 2020, initiating removal proceedings

against him at the Executive Office for Immigration Review, Varick Street Immigration Court.

*See* Ex. A, Notice to Appear.

24. Mr. Gonzalez Cruz was charged with removability pursuant to INA §237(a)(2)(A)(iii) and

237(a)(2)(B)(i). *Id.* On December 30, 2020, 18 days after he was first arrested and detained by

ICE, Mr. Gonzalez Cruz appeared for his first hearing before Immigration Judge ("IJ") Thomas

J. Mulligan at the Varick Street Immigration Court. IJ Mulligan adjourned the case until

January 27, 2020 to allow Mr. Gonzalez Cruz's attorney to investigate his case.

25. Mr. Gonzalez Cruz had approximately seven scheduled appearances before the Immigration

Court. Mr. Gonzalez Cruz first appeared on December 30, 2020. On that date, the case was

continued for attorney preparation. Mr. Gonzalez Cruz next appeared on January 27, 2020. On

that date, Mr. Gonzalez Cruz admitted the factual allegations contained in the Notice to Appear

and deferred to the Court with regard to the charges of removability. Mr. Gonzalez next

appeared on February 10, 2020. On that date, Mr. Gonzalez Cruz submitted his application for

withholding of removal and protection under the Convention Against Torture. The case was

9

scheduled for a hearing on the merits of his applications for relief from removal on March 17, 2020. Before the March 17, 2020 hearing, the Covid-19 pandemic exploded and New York State effectively shut down. On March 16, 2020, Mr. Gonzalez Cruz sought an emergency continuance which was granted. The next hearing was scheduled for June 17, 2020. Mr. Gonzalez Cruz sought a continuance prior to the June 17, 2020 hearing due to the ongoing quarantine at the Essex County Correctional Facility and the impediment caused by lack of access to confidential communication with counsel. Mr. Gonzalez Cruz's hearing was rescheduled to July 28, 2020. A continuance was once again sought on the same basis as the continuance request made prior to the June 17, 2020 hearing. The case was then set for September 8, 2020. On that date, the Immigration Court heard the merits of Mr. Gonzalez Cruz's applications for relief. At the conclusion of the hearing the Immigration Court stated its intention to deny relief, but did not issue a decision on that date.

Punitive and Unreasonable Civil Imprisonment

26. As of the date of this filing, Mr. Gonzalez Cruz remains detained. He has now been detained for 286 days first at the Essex County Correctional Facility and then at the Hudson County Correctional Facility, in conditions identical to those of county jail inmates in criminal cases. He has never been provided a bond hearing.

27. At this time, Mr. Gonzalez Cruz has been detained for over nine months without any individualized review by a neutral fact-finder as to whether his custody in a county jail is at all warranted. Moreover, he is likely to be detained for many more months. On September 8, 2020,

the Immigration Judge heard the merits of Mr. Gonzalez Cruz's applications for relief from removal. At the conclusion of the hearing the Court stated that it intended to deny Mr. Gonzalez Cruz's applications, however, the Court reserved decision for the issuance of a written opinion. The Court further stated that it would take 30 days to issue the written decision. It may still be many weeks or even months before the IJ issues a decision on the merits of Mr. Gonzalez Cruz's case. Moreover, Mr. Gonzalez Cruz will most certainly appeal an adverse decision. DHS has a practice of keeping individuals detained while appeals are pending, and therefore Mr. Gonzalez Cruz is likely to remain detained for many more months. Statistics from the Executive Office of Immigration Review show that, in cases where an appeal is taken, the average length of detention is 382 days.[1]

28. Furthermore, even if DHS were to prevail on appeal at the Board of Immigration Appeals, the proceedings would still continue for many additional months or years as Mr. Gonzalez Cruz would likely appeal any loss to the Second Circuit Court of Appeals.

## **LEGAL BACKGROUND**

### **Constitutional Limitations on Prolonged Detention**

29. Even if 8 U.S.C. § 1226(c) authorizes Respondents to detain Mr. Gonzalez Cruz, federal appellate courts and the Supreme Court have recognized that detention under § 1226(c) must

---

[1] The government had underestimated the median length of detention in its representations to the Supreme Court at the time *Demore* was decided, discussed *infra* at ¶ 47.

comply with the Due Process Clause. The continued detention of Mr. Gonzalez Cruz without a hearing deprives him of these procedural protections to which he is entitled.

30. Read in combination, the two foundational Supreme Court decisions related to mandatory detention provide that the United States Constitution imposes a limiting principle on immigration detention of non-citizens. *See Zadvydas v. Davis*, 533 U.S. 678 (2001) (holding that continued detention beyond the 90-day removal period is permissible for only such time as is reasonably necessary to secure the noncitizen's removal); *Demore v. Kim*, 538 U.S. 510 (2003) (finding that mandatory detention was authorized but only for the brief period necessary to complete removal proceedings).2 More specifically, these cases establish that the due process requirement that "the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed," *Jackson v. Indiana*, 406 U.S. 715, 738 (1972), extends to immigration detention.

31. Since *Demore*, a series of federal appellate cases have addressed due process rights under § 1226(c), culminating in the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018).

---

[2] The majority opinion in *Demore* notably relied on erroneous statistics indicating that mandatory detention under § 1226(c) was generally not for a prolonged period of time. The majority noted that the average and median length of detention in 85% of the cases of mandatory detention was respectively 47 and 30 days and that in the remaining 15% of cases in which there was an appeal the average and median length of detention was about four additional months, making the length of mandatory detention "roughly a month and a half in the vast majority of cases . . . and about five months" in the relatively few cases in which there is an appeal. *Id.* at 530. These statistics were later revealed to be erroneous and the true average length of immigration detention was shown to be much longer. *See* Letter from U.S. Department of Justice, Solicitor General, Re: *Demore v. Kim*, S. Ct. No. 01-1491, dated August 26, 2016, https://online.wsj.com/public/resources/documents/Demore.pdf; *Jennings v. Rodriguez*, 138 S. Ct. 830, 869 (2018) (Breyer, J., dissenting) ("The Government now tells us that the statistics it gave to the Court in *Demore* were wrong. Detention normally lasts twice as long as the Government then said it did. And, as I have pointed out, thousands of people here are held for considerably longer than six months without an opportunity to seek bail.").

32. Although *Jennings* did interpret and clarify the "shall detain" clause of § 1226(c), it expressly

did not reach the merits of the due process claims. *Id.* at 851; *see also Vallejo v. Decker*, No. 18

Civ. 5649 (S.D.N.Y. Aug. 7, 2018), ECF No. 19, at 5 (noting that *Jennings* did not address the

constitutional question of whether the Due Process Clause prohibits prolonged detention of an

alien). Thus, it did not disturb prior decisions establishing that the Fifth Amendment protects

the due process rights of non-U.S. citizens who are within the legal jurisdiction of the United

States, including individuals like Petitioner herein who are in removal proceedings. *See*

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal

circumstance changes, for the Due Process Clause applies to all 'persons' within the United

States, including aliens, whether their presence here is lawful, unlawful, temporary or

permanent.") (citations omitted). In cases of immigration detention, where the detainee's

physical liberty interests are clearly at stake, such detention must comport with the due process

requirements of the Fifth Amendment and *Jennings* did nothing to alter that requirement.

*Hernandez v. Decker*, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25,

2018) ("because the Jennings majority and dissent . . . declin[ed] to reach the constitutional

question at issue here, the Court is unpersuaded that Jennings has any bearing on the

appropriate procedures consistent with due process."); *Sajous v. Decker*, No. 18 Civ. 2447

(AJN), 2018 WL 2357266, at *6 (S.D.N.Y. May 23, 2018) (finding that post-Jennings, courts

still find Lora's constitutional analysis persuasive authority).

33. The only sanctioned purposes for detaining non-citizens pursuant to 8 U.S.C. § 1226(c)(1)

are: (1) to ensure the appearance of non-citizens at future hearings; and (2) to prevent danger to

13

the community pending the completion of removal. *Demore*, 538 U.S. at 532-33 (Kennedy, J.,

concurring). Thus, to withstand constitutional scrutiny, the nature and duration of mandatory

detention under § 1226(c) must be reasonably related to these purposes.

34. In the years between *Demore* and *Jennings*, every federal circuit court to consider the issue

found that Fifth Amendment due process imposes a temporal limitation on mandatory detention

under § 1226(c). *See Sopo v. U.S. Atty. Gen.*, 825 F.3d 1199, 1214 (11th Cir. 2016) ("[A]s a

matter of constitutional avoidance . . . [w]e too construe § 1226(c) to contain an implicit

temporal limitation at which point the government must provide an individualized bond hearing

to detained criminal aliens whose removal proceedings have become unreasonably

prolonged."); *Reid v. Donelan*, 819 F.3d 486, 500 (1st Cir. 2016) ("The concept of a categorical,

mandatory, and indeterminate detention raises severe constitutional concerns."); *Lora v.

Shanahan*, 804 F.3d 601, 606 (2d Cir. 2015) cert. granted, judgment vacated, 84 USLW 3562

(U.S. Mar. 5, 2018) (setting bright-line six-month limitation on mandatory detention);

*Rodriguez v. Robbins*, 804 F.3d 1060, 1138 (9th Cir. 2015) *rev'd sub nom. Jennings v.

Rodriguez*, 138 S. Ct. 830 (2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011)

(adopting case-by-case approach to determine reasonableness limitation); *Ly v. Hansen*, 351

F.3d 263 (6th Cir. 2003).

35. Since *Jennings*, courts have adopted two approaches for examining the constitutionality of

mandatory detention under § 1226(c): (i) holding that the Due Process Clause requires a bond

hearing after six months, or (ii) addressing individual circumstances on a case-by-case basis.
Mr. Gonzalez Cruz's detention should be found unconstitutional under either approach.

36. In *Hernandez v. Decker*, Judge Carter held that prolonged mandatory detention without a
bond hearing under § 1226(c) violated the Due Process Clause under both the bright-line rule
or the individual factor test, explaining that the petitioner's nine-month "detention without a
bond hearing has become unreasonably prolonged, whether the Court applies a bright-line rule
or conducts an as-applied reasonableness analysis." No. 18 Civ. 5026 (ALC), 2018 U.S. Dist.
LEXIS 124613, at *17 (S.D.N.Y. July 25, 2018).

37. Courts have applied the case-by-case analysis by looking to a number of factors to assess
"whether prolonged mandatory detention of an alien under 8 U.S.C. § 1226(c) . . . violates the
Due Process Clause of the Fifth Amendment." *Sajous v. Decker*, No. 18 Civ. 2447 (AJN), 2018
U.S. Dist. LEXIS 86921, at *2 (S.D.N.Y. May 23, 2018).  In *Sajous*, in concluding that the
petitioner's eight-month mandatory detention violated his due process rights, Judge Nathan
examined whether the "particular circumstances surrounding the Petitioner's detention make
the duration for which he has been held without a bond hearing unreasonable," considering the
length of detention, the cause of delays, defenses to removal, length of the detention as
compared to the time served for the underlying criminal offense, and "whether the facility for
the civil immigration detention is meaningfully different from a penal institution for criminal
detention." *Id*. at *11, 18, 24–25, 32–37. Additional factors include the time that has passed
between the noncitizen's release from the criminal offense that qualifies for mandatory

detention and arrest by ICE, *Fortune v. Decker*, No. 19 Civ. 9740 (AT), 2019 WL 6170737

(S.D.N.Y Nov. 20, 2019), and how much longer the case will likely continue. *Hernandez v.*

*Decker*, 2018 U.S. Dist. LEXIS 124613, at *23. 3

38.Courts in the Southern District have now "overwhelmingly adopted" the multi-factor

approach. *See, e.g., Dukuray v. Decker*, No. 18 Civ. 2898 (VB), 2018 WL 5292130, at *3-4

(S.D.N.Y. Oct. 25, 2018); *see also Arce-Ipanaque v. Decker,* No. 19 Civ. 1076 (JMF), 2019 WL

2136727, at *1 (S.D.N.Y. May 15, 2019); *Gomes Herbert v. Decker*, No. 19 Civ. 760 (JPO),

2019 WL 1434272, at *2 (S.D.N.Y. Apr. 1, 2019); *Joseph v. Decker*, No. 18 Civ. 2640 (RA),

2018 WL 6075067, at *10 (S.D.N.Y. Nov. 21, 2018); *Cabral v. Decker*, 331 F. Supp. 3d 255,

261 (S.D.N.Y. 2018) (applying hybrid of Young factors and Sajous factors); *Brissett v. Decker*,

324 F. Supp. 3d 444, 452 (S.D.N.Y. 2018); *Cruz v. Decker*, No. 18 Civ. 09948 (GBD) (OTW),

Report & Recommendation, ECF No. 54, (S.D.N.Y. Aug. 27, 2019).

39.Courts in this District, when contemplating who bears the burden of proof in immigration

bond hearings whether the Petitioner is detained under § 1226(a) or § 1226(c), have

---

[3] Other district courts to address the implications of *Jennings* have come to a similar conclusion. A Minnesota
district court, for example, concluded that "[t]he import of *Jennings*, then, is that the Court may no longer simply
rely on those cases purporting to apply *Demore*, but most [sic] look to *Demore* itself and must attempt to address the
constitutional issue directly." *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-5055 (DWF/DTS), 2018 U.S. Dist.
LEXIS 88643, at *8 (D. Minn. Mar. 23, 2018). The Minnesota District Court therefore examined whether the
individual petitioner's detention had become "unreasonable so as to require a bond hearing" on whether the
petitioner posed a risk of flight or danger to the community. *Id.* at *12. It listed relevant factors in determining
reasonableness as "the total length of detention; the foreseeability of proceedings concluding in the near future (or
the likely duration of future detention); the period of the detention compared to the criminal sentence; the
promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will
culminate in a final removal order." *Id.* at *13 (citation omitted); *see also* Report and Recommendation at 14,
*Maniar v. Warden Pine Prairie Correctional Center*, No. 6:18 Civ. 00544 (W.D. La. July 11, 2018), ECF No. 28
(discussing *Jennings* and holding that detention exceeding six months "without the opportunity to at least seek a
hearing offends the Due Process Clause").

overwhelmingly held that Due Process requires that the government must bear the burden and

prove, by clear and convincing evidence, that the Petitioner is a danger to the community or

flight risk. Additionally, Immigration Judges must take into account a Petitioner's ability to pay

a bond and any alternatives to detention. *See, e.g., Sajous*, 2018 WL 2357266, at *12; *Velasco*

*Lopez v. Decker*, No. 19 Civ. 2912, 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019)

("[E]very court to have considered the constitutional issue presented in this case has agreed ...

[that] under the Due Process Clause of the Fifth Amendment, it is the Government's burden to

justify the detention of an immigrant at a bond hearing under § 1226(a)."); *Darko v. Sessions*,

342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018); *Martinez v. Decker*, No. 18 Civ. 6527, 2018 WL

5023946, at *4–5 (S.D.N.Y. Oct. 17, 2018); *Perez v. Decker*, No. 18 Civ. 5279, 2018 WL

3991497, at *6 (S.D.N.Y. Aug. 20, 2018); *Fernandez Aguirre v. Barr*, No. 19 Civ. 7048 (VEC),

2019 WL 3889800, at *2 (S.D.N.Y. Aug. 19, 2019).

40. Mr. Gonzalez Cruz's mandatory detention is unconstitutional because it is insufficiently

related to the purposes of detention recognized in *Demore;* specifically, (1) to ensure the

appearance of non-citizens at future hearings; and (2) to prevent danger to the community

pending completion of removal. *Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring). Mr.

Gonzalez Cruz has already been detained for over 9 months, has not engaged in any dilatory

conduct in his removal proceedings, and "has applied for relief." In contrast, the delays have

been directly attributable to the Covid-19 pandemic.  Moreover, Mr. Gonzalez Cruz is being

held in a penal institution under circumstances identical to those serving criminal sentences.

41. In this legal framework, Mr. Gonzalez Cruz's continued mandatory detention must be held unlawful for the reasons discussed below.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:

### 8 U.S.C. § 1226(c) IS UNCONSTITUTIONAL AS APPLIED TO ANY INDIVIDUAL WHO WILL BE DETAINED MORE THAN SIX MONTHS

42. Petitioner repeats and re-alleges paragraphs 1-41 of this petition.

43. To date, Mr. Gonzalez Cruz has been detained for 286 days without judicial review. This exceeds six months, and the median and average length of detention for removal proceedings under § 1226(c) cited by the Supreme Court in *Demore*. 538 U.S. at 530. It is also in excess of the five months the Supreme Court contemplated as sufficient for an appeal of a removal order. *Id.*

44. Given the liberty interests at stake, the government's statutory detention authority under § 1226(c) must be limited to a six-month period, subject to a finding of flight risk or dangerousness in an individualized judicial bond hearing. Mandatory detention under § 1226(c) beyond six months violates due process.

### SECOND CAUSE OF ACTION:

### APPLICATION OF 8 U.S.C. § 1226(c) TO PETITIONER IS ARBITRARY AND A VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

18

45. Petitioner repeats and re-alleges paragraphs 1-44 of this petition.

46. The Supreme Court has never authorized a reading of § 1226(c) that would permit DHS to detain non-citizens without bond in cases where flight risk and danger cannot be reasonably presumed. *Demore*, 538 U.S. at 533 (Kennedy, J., concurring) ("If the government cannot satisfy [the minimal threshold burden of showing the relationship between detention and its purpose], then the permissibility of continued detention pending deportation proceedings turns solely upon the alien's ability to satisfy ordinary bond procedures . . . .").

47. As applied to Mr. Gonzalez Cruz, 8 U.S.C. § 1226(c) is unconstitutional due to the nine months of imprisonment without a bond hearing, a lack of evidence that he poses a flight risk or a danger to the community, and his long residence and family ties in the United States. The delays in Mr. Gonzalez Cruz's case have been attributable to the Covid-19 pandemic and have been out of his control.

48. Moreover, Mr. Gonzalez Cruz's prolonged detention violates his Due Process Rights under the analysis applied by this Court. First, Mr. Gonzalez Cruz has been detained for more than nine months. In *Sajous*, Judge Nathan cited the length of detention as the most important factor in the analysis, noting that—while not setting a bright-line rule—detention lasting longer than six months "is more likely to be 'unreasonable' and thus contrary to due process." *Sajous*, 2018 WL 2357266, at *9. Here, Mr. Gonzalez Cruz's detention has lasted over nine months and is likely to last much longer.

49. Second, the delay in Mr. Gonzalez Cruz's case has arisen from court backlogs and the complications associated with the Covid-19 pandemic. Mr. Gonzalez Cruz was previously detained under quarantine at the Essex County Correctional Facility. Non-citizens imprisoned at Essex County have limited access to their lawyers, and phone calls for a period during the height of the pandemic were the only means of communication. Mr. Gonzalez Cruz requested continuances to permit him to prepare his case with his attorneys. Courts in this district have emphasized that petitioners "should not be punished for pursuing avenues of relief and appeals." *Hernandez*, 2018 WL 3579108, at *6; *see also Brissett*, 324 F. Supp. 3d at 453.

50. Third, Mr. Gonzalez Cruz's asserted defenses to removal are not frivolous. "[T]he Court need not inquire into the strength of these defenses—it is merely sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed […]" *Sajous v. Decker*, 2018 WL 2357266, at *11. Mr. Gonzalez Cruz requested withholding of removal under INA §241 as well as protection under the Convention Against Torture.

51. Fourth, Mr. Gonzalez Cruz has been in immigration detention far longer than he was ever incarcerated for his violation of NYPL §220.39(1) which has rendered him removable from the United States. Mr. Gonzalez Cruz served did not serve any jail time in connection with his condition for violation of NYPL §220.39(1), but rather was sentenced to five years probation. He has been in immigration detention for 286 days.

52. Finally, Hudson County Correctional Facility is not "meaningfully different from a penal institution for criminal detention." *Id*. at *11 (citations omitted).

53. Mr. Gonzalez Cruz's 286-day detention without a bond hearing is unreasonable and violates the Due Process Clause.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. Assume jurisdiction over this matter;

2. Enjoin Respondents from moving Petitioner from the New York City area while habeas proceedings are pending;

3. Issue a Writ of Habeas Corpus ordering Respondents to, within seven days of this Court's order, release Petitioner on his own recognizance or provide him with a recorded, individualized hearing before a neutral arbitrator at which: (1) DHS must physically produce Petitioner; (2) DHS carries the burden of proof to establish by clear and convincing evidence that Petitioner poses a flight risk or a future danger to the public; (3) the adjudicator may not give undue weight to the allegations underlying dismissed criminal charges; and (4) the adjudicator is required to meaningfully consider alternatives to imprisonment such as release on recognizance, parole, or electronic monitoring, and to meaningfully consider Petitioner's ability to pay if setting a monetary bond;

4. Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other statute; and

5. Grant such further relief as the Court deems just and proper.

New York, NY

September 23, 2020

Respectfully submitted,

/s/ Craig Relles

Craig Relles, Esq.
Law Office of Craig Relles
12 Water Street, Suite 203
White Plains, NY 10601
(914) 919-9030
cr@crelleslaw.com
Attorney for Nohasses Gonzalez Cruz

## TABLE OF EXHIBITS IN SUPPORT OF PETITION

| EXHIBIT | NAME |
|---------|------|
| A | Notice to Appear |